UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PEPPER MANUEL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 22-3194** |
| **PROTECTIVE INSURANCE COMPANY, ET AL** | **SECTION: "T" (4)** |

### ORDER AND REASONS

The Court has before it Defendant FedEx Ground Package System, Inc.'s ("FedEx") Motion in Limine, R. Doc. 28. In this Motion, FedEx asks this Court to hold that it must apply Texas law in determining the amount Plaintiff can recover for any past medical expenses he may be awarded if successful in this action. R. Doc. 28-1 at 9. Plaintiff Pepper Manuel has responded in opposition, arguing that the Court must apply Louisiana law to this issue. R. Doc. 43. Having considered the parties' arguments and the applicable law, the Court will GRANT the Motion.

I.     BACKGROUND

This case arises from a motor vehicle collision that occurred on March 7, 2022, in Metairie, Louisiana. R. Doc. 1-3 at 2. Plaintiff, a citizen of Texas, asserts he was seriously injured when his vehicle was rear-ended by a FedEx delivery truck, which then fled the scene. *Id.* at 1–2. Plaintiff, who works independently for his own LLC as a "hotshot" trucker,[1] had just completed a delivery to an Audi car dealership located in Louisiana when the collision occurred. R. Doc. 43 at 1–2. Plaintiff filed suit in Louisiana state court, asserting that FedEx, which is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania, *see* R. Doc. 1 at 3, is

---

[1] "Hotshot" trucking refers to the hauling of small cargo loads, typically by means of a pickup truck with a trailer.

1

liable for the damages Plaintiff incurred as a result of the collision. *Id.* at 2–4. Plaintiff asserted several categories of damages in his complaint, including physical and mental pain and suffering, past and future medical expenses, lost wages, and loss of future earning capacity. *Id.* at 4. Based on diversity jurisdiction, FedEx removed the case to this Court, R. Doc. 1, which set it for trial by jury on December 4, 2023. R. Doc. 18. In anticipation of trial, both Plaintiff and FedEx have filed several motions in limine, including FedEx's instant Motion seeking the application of Texas law to Plaintiff's claim for past medical expenses.

## II.   LAW AND ANALYSIS

As an initial matter, Plaintiff argues this Court should reject FedEx's Motion as filed in violation of the Court's Scheduling Order. R. Doc. 43 at 2–4. The Scheduling Order states that the Court will consider motions for partial summary judgment only where the moving party has shown good cause to file such motions and obtained leave of court. R. Doc. 18 at 1. Plaintiff asserts that the instant Motion is not truly a motion in limine, but a "veiled request for a partial summary judgment seeking to have substantive law applied that governs the outcome of the case." R. Doc. 43 at 2. In support of this argument, Plaintiff points largely to cases from outside the Eastern District of Louisiana in support of the proposition that "[a] motion *in limine* cannot be a substitute for a motion for summary judgment, a motion to dismiss, or a motion for directed verdict[.]" *Marlow LLC v. BellSouth Telecommunications, Inc.*, 2013 WL 125900, at *3 (S.D. Miss. Jan. 9, 2013) (citation omitted).[2] That is, Plaintiff asserts that FedEx's Motion is actually a motion for

---

[2] Plaintiff cites to one case from this district in support of this argument. *See* R. Doc. 43 at 2 n. 5 (citing *Reuther v. Realtors*, 2016 WL 4592193, at *2 (E.D. La. Sept. 2, 2016)). This case is inapposite to Plaintiff's argument for the same reasons discussed *infra*. In *Reuther*, the moving defendant asked the court, by way of a purported motion in limine, to exclude all of the plaintiffs' evidence as to their claims under the Age Discrimination Employment Act and Title VII. 2016 WL 4592193, at *2–3. The defendant argued that this evidence was irrelevant because, it claimed, the plaintiffs were independent contractors and thus not protected by the ADEA or Title VII. *Id.* The *Reuther* court denied the defendant's motion, reasoning that, to exclude this evidence as irrelevant, the court would need to make a legal determination as to whether there was any genuine issue of material fact as to the plaintiffs'

2

partial summary judgment because "[m]otions in limine are meant to deal with discrete evidentiary issues related to trial, and are not another excuse to file dispositive motions disguised as motions in limine[,]" and therefore argue that, here, "[t]he denial of [the] motion in limine is warranted where the moving party seeks to argue the merits of its case and preclude the non-moving party from presenting its case." *Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) (citations omitted).

However, the cases Plaintiff cites are inapposite to the instant Motion because the Motion does not seek any dispositive ruling. Dispositive motions, such as motions for summary judgment, to dismiss, or for a directed verdict, are motions which ask the Court "to decide a claim or case in favor of the movant without further proceedings." *Black's Law Dictionary* 1168 (10th ed. 2014). While a choice-of-law determination may in some circumstances be dispositive of a claim or case, here a holding by this Court that it must apply either Louisiana or Texas law would not "decide" any of Plaintiff's claims, nor would this holding "govern[] the outcome of the case." R. Doc. 43 at 2. It would simply be a ruling that, should Plaintiff prevail on his yet undecided claim for past medical expenses, the amount of those expenses Plaintiff may recover will be dictated by the law of either state. Additionally, courts in this district and others regularly consider non-dispositive choice-of-law issues raised in motions in limine. *See, e.g.*, *Tolliver v. Naor*, 115 F. Supp. 2d 697 (E.D. La. 2000) (considering choice-of-law as to allocation of losses on motion in limine); *Ramsey v. Bell Helicopter Textron, Inc.*, 704 F. Supp. 1381 (E.D. La. 1989) (considering choice-of-law as to the availability of punitive damages on motion in limine); *Fietz v. Southland Nat. Ins. Co.*, 484

---

status as independent contractors—"precisely the analysis the Court would engage in on a motion for summary judgment." *Id.* at 3. Accordingly, the court explained, "regardless of the label on the motion, Defendant is clearly using a motion in limine to decide an issue that would *dispose* of Plaintiffs' ability to try their claims[.]" *Id.* (emphasis added). In other words, the *Reuter* court rejected the defendant's motion in limine because it sought a dispositive ruling. In contrast, as discussed *infra,* in the instant case, granting FedEx's Motion in Limine would not require this Court to make any holding that would dispose of any of Plaintiff's claims.

3

F. Supp. 2d 535, 546 (W.D. La. 2007) (considering which state's law the court must apply to decide each of the plaintiff's claims on motion in limine). Accordingly, FedEx's Motion is a properly filed motion in limine, not a "veiled" motion for partial summary judgment. The Court will thus proceed to consider the merits of the Motion in Limine.

### A. Applicable Law

A federal court sitting in diversity must apply the substantive law of the forum state; here, Louisiana. *See, e.g.*, *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938). As to choice-of-law in delictual claims like Plaintiff's, Louisiana Civil Code Article 3542 provides, in pertinent part:

> . . . [A]n issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts. [3]
>
> Referenced therein, Article 3515, which provides Louisiana's general and residual rule for

choice-of-law where a more specific article does not apply, adds that "the state whose policies

---

[3] La. C.C. art. 3542 states the "general rule" that applies to choice-of law determinations in delictual and quasi-delictual actions "[e]xcept as otherwise provided in this Title[.]" Choice-of-law issues pertaining to "loss distribution and final protection[,]" such as, here, the recoverable amount for a successful delictual action, are generally governed by the more specific Article 3544. La. C.C. art. 3544. However, Article 3544 applies only (1) where "the injured person and the person who caused the injury were domiciled in the same state" or different states with substantially identical applicable laws, or; (2) where "the injured person and the person who caused the injury were domiciled in different states" if the injury and conduct that caused it occurred in one of those states, or if the injury and relevant conduct occurred in different states, provided that the injured person was domiciled in the state where the injury occurred. None of these enumerated scenarios is present in this case. Accordingly, this Court must apply the general rule in Article 3542 to the instant choice-of-law question.

would be most seriously impaired if its law were not applied to that issue . . . is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." *See also Champagne v. Ward*, 2003-3211 (La. 1/19/05), 893 So. 2d 773, 786 (holding that Louisiana courts must conduct an analysis under La. C.C. art. 3515 *et seq.* to determine choice-of-law in multistate cases). Thus, to conclude which state's law this Court must apply in determining the amount of Plaintiff's recoverable past medical expenses, this Court must evaluate, based on the factors listed in Articles 3542 and 3515, whether the policies of Louisiana or Texas would be more seriously impaired if that state's law is not applied to this issue.

    **B.  Conflict of Laws**

Under Louisiana law, "the appropriate starting point in a multistate case is to determine if there is a difference between Louisiana's law and the law of the foreign state." *Jones v. Fin. Indem. Co.*, 52,421 (La. App. 2 Cir. 1/16/19), 264 So. 3d 660, 671 (citing *Champagne*, 893 So. 2d at 786). "If the laws of the states do not conflict, then no choice-of-law analysis is necessary." *Schneider National Transport v. Ford Motor Company,* 280 F.3d 532, 536 (5th Cir. 2002) (citing *W.R. Grace and Co. v. Continental Cas. Co.,* 896 F.2d 865, 874 (5th Cir. 1990)). Accordingly, this Court must first determine whether Texas law conflicts with Louisiana law as to what past medical expenses Plaintiff may recover should he prevail in this action. FedEx alleges two conflicts between the applicable laws of these states. The Court will examine each in turn.

5

1. **Recoverable Damages**

Louisiana Revised Statutes § 9:2800.27 governs the recovery of past medical expenses in Louisiana. In its Motion, FedEx points to § 9:2800.27(B), which provides, *inter alia*, that in cases where a claimant's medical expenses have been paid, in whole or in part, by Medicare or private health insurance, the claimant's recovery is limited to the amount actually due to the medical provider, not the amount billed.[4] But § 9:2800.27(B) also directs courts to "award to the claimant forty percent of the difference between the amount billed and the amount actually paid to the contracted medical provider" unless the defendant proves that this additional amount would render the total award to the claimant unreasonable. FedEx argues that this second provision conflicts with the analogous Texas statute, Texas Civil Practices and Remedies Code § 41.0105, which provides, in pertinent part, that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant." In other words, FedEx argues that, in Texas, as in Louisiana, a claimant's recovery of medical expenses is limited to the amount he (or his insurer) is required to pay. But, in Louisiana, if Medicare or private health insurance has paid for his medical expenses, the claimant is generally also entitled to a percentage of the difference between the amount paid and the amount billed by the provider.

FedEx is correct that these provisions are facially conflictory in that Louisiana law allows for a greater damages award where a claimant's medical expenses are covered by insurance. However, as Plaintiff argues and FedEx does not contest, in this case Plaintiff is not covered by Medicare or private health insurance—he is personally responsible for all of his medical expenses resulting from the instant collision. Thus, La. R.S. § 9:2800.27(B) is inapplicable here.

---

[4] These two figures can be significantly divergent because insurance providers generally contract with their in-network providers to pay less than the provider's billed amount.

Instead, this case implicates § 9:2800.27(D), which governs where a claimant's medical expenses have not been paid in any part by Medicare, Medicaid, or private health insurance. As does the first provision of § 9:2800.27(B), § 9:2800.27(D) limits the claimant's recovery for past medical expenses to the amount actually paid or owed to the medical provider. However, § 9:2800.27(D) does not include § 9:2800.27(B)'s second provision for the award of additional damages, or any other provisions which could be read to conflict with Texas law on this issue. Thus, as applied to this case, there is no conflict between La. R.S. § 9:2800.27 and Tex. Civ. Prac. & Rem. Code § 41.0105.

2.  **Reasonableness of Medical Expenses**

FedEx also asserts a conflict between the Louisiana and Texas case law applicable to this issue. Based on common law, Texas courts require a plaintiff's asserted medical expenses to be "reasonable" and will deny the recovery of those expenses in the absence of evidence showing that the charges are reasonable. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 249 (Tex. 2021) (citing *Dall. Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 380, 383 (1956)). In contrast, under Louisiana law, "a tortfeasor is required to pay for medical treatment of his victim, even for overtreatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith." *Rodrigue v. Nat'l Ins. Co.*, 2021 WL 3284254, at *3 (E.D. La. July 2, 2021) (citing *Alexander v. Ford*, 03-887 (La. App. 5 Cir. 1/27/04), 866 So. 2d 890, 899). This illustrates a clear and undeniable conflict: In Texas, the plaintiff has the burden of showing that his asserted past medical expenses are reasonable, or they will not be recoverable. In Louisiana, such expenses are recoverable, even if unreasonable, unless the defendant carries the burden of showing that the

plaintiff incurred them in bad faith. Accordingly, the substantive laws of Louisiana and Texas do conflict as to the issue of Plaintiff's recoverable past medical expenses.[5]

### C. Choice-of-Law Analysis

Having concluded Louisiana and Texas law conflict as applied to the instant issue, this Court must conduct a choice-of-law analysis under La. C.C. arts. 3515 and 3542 to determine which state's policies would be more seriously impaired if its law is not applied in calculating the amount of Plaintiff's recoverable past medical expenses. Drawing from those articles, the Louisiana Supreme Court has laid out a non-exhaustive list of the "most important factual contacts" with the relevant states that courts must consider in performing this analysis. *Arabie v. CITGO Petroleum Corp.*, 2010-2605 (La. 3/13/12), 89 So. 3d 307, 316 (citing La. C.C. art. 3542, Revision Comment (a)). These are:

> (1) The pertinent contacts of each state to the parties; (2) their contacts to the events giving rise to the dispute, including the place of conduct and injury; (3) the domicile, habitual residence, or place of business of the parties; (4) the state in which the relationship between the parties was centered; (5) deterring wrongful conduct; and (6) repairing the consequences of injurious acts . . . (7) the relationship of each state to the parties and the dispute; and (8) the policies and needs of the interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*Arabie*, 89 So. 3d at 315–16. (citing La. C.C. arts. 3515; 3542).

In order to "evaluat[e] the strength and pertinence of the relevant policies of the involved states in the light of" the above factors, *see* La. C.C. arts. 3515; 3542, this Court must identify the

---

[5] It is of course possible that a plaintiff's ultimate monetary award could be the same under the application of either state's law, being limited in both states to the amount actually due to a medical provider. But, if Texas law applies, the plaintiff must carry a much heavier burden to prove his entitlement to the full amount of those damages. This difference is sufficient to constitute a conflict in the substantive laws of the two states. *See, e.g.*, *Dick v. New York Life Ins. Co.*, 359 U.S. 437 (1959) ("Under the *Erie* rule . . . burden of proof [is] substantive[.]") (citations and internal quotations omitted).

relevant state policies that may be impaired. As to Texas, FedEx asserts the state has a "substantial and overwhelming interest in the application of its laws governing the recovery of medical expenses for this Texas plaintiff and Texas medical providers[.]" R. Doc. 28-1 at 9. On the other hand, Plaintiff argues that Louisiana's interests in "regulating conduct that occurs within its borders[;]" "applying its laws to regulate the rights and liabilities of a nonresident defendant who contracted with a domestic company to perform delivery services" within Louisiana; and "the consistent and comprehensive implementation of [Louisiana] tort laws" would be more seriously impaired should this Court apply Texas law. R. Doc. 43 at 10. Additionally, Plaintiff asserts that the "policies and needs of the interstate system" would be best served by the application of Louisiana law because of the "[justified] expectations of the parties" that an accident occurring in Louisiana, and caused by the named Defendants' actions in Louisiana, would be governed by Louisiana law; and because the application of Louisiana law to this issue, in conformity with the rest of the case, would "minimize[e the] adverse consequences that might follow from subjecting a party to the law of more than one state[.]" *Id.* (citing *Arabie*, 89 So. 3d at 315–16).

   1. **Relevant Contacts**

In support of its argument that Texas's policies would be more severely impaired should this Court apply Louisiana law, FedEx asserts there are "overwhelming contacts with Texas" in this case, pointing out that (1) Plaintiff is a resident of Texas, was domiciled there at the time of the collision, and intends to return; (2) Plaintiff's damaged truck was registered in Texas and had a Texas license plate; (3) Plaintiff had a Texas driver's license with a Texas home address; (4) Plaintiff's trucking company was formed, registered, and operated out of Texas; and (4) all but

9

one of Plaintiff's medical providers are located in Texas.[6] R. Doc. 28-1 at 8–9. FedEx identifies the only relevant contacts to Louisiana as that (1) the collision took place in Louisiana; (2) Plaintiff is currently living in Louisiana while recovering from surgery necessitated by his injuries; and (3) Plaintiff is currently undergoing chiropractic treatment in Louisiana. *Id.* at 9.

In opposition, Plaintiff asserts additional relevant contacts with Louisiana, namely that (1) Plaintiff was injured in Louisiana while performing contracted work for a business located in Louisiana; (2) the unidentified driver of the FedEx truck involved in the collision is likely domiciled in Louisiana; and (3) Plaintiff filed his lawsuit and sought compensation in Louisiana. Plaintiff additionally points out that "the state in which the relationship between the parties was centered" is also necessarily Louisiana, given that the only contact between the parties to this action has been via the collision in Louisiana and this Louisiana litigation.

   2. Discussion

FedEx relies primarily on two Louisiana state cases in support of its argument that, in light of the above factors, this Court must apply Texas law to the instant issue. *See* R. Doc. 28-1 at 4–7. In *Champagne v. Ward*, which arose from injuries suffered by a Mississippi plaintiff as the result of an automobile accident in Louisiana, the Louisiana Supreme Court considered whether the state's uninsured motorist ("UM") coverage statute, La. R.S. 22:1406(D),[7] mandated the application of Louisiana law to the interpretation of out-of-state UM coverage insurance policies, or whether courts must still conduct a choice-of-law analysis. 93 So. 2d at 774–76. The *Champagne* court concluded that a choice-of-law analysis was required, and, applying La. C.C.

---

[6] Based on his submitted evidence, Plaintiff has seen a total of nine medical providers: eight in Texas, and one in Louisiana. *See* R. Doc. 28-1 at 8. Plaintiff has so far incurred over $250,000 in medical expenses payable to the Texas providers, and only $733 payable to the Louisiana provider. *See id.*
[7] Now La. R.S. 22:1295.

art. 3515, as well as Article 3437, Louisiana's choice-of-law article for conventional obligations, held that the UM policy had to be interpreted under Mississippi law. *Id.* at 788–89. The court relied principally on the fact that, although the plaintiff's accident had occurred in Louisiana with a Louisiana defendant, the plaintiff's insurance policy was a Mississippi contract that had been negotiated and formed in Mississippi and which would effectively be abrogated if interpreted under Louisiana law. *Id.* at 789. Therefore, it reasoned, "Mississippi has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana." *Id.*

In the second case, *Jones v. Fin. Indem. Co*, the Louisiana Second Circuit Court of Appeal, following *Champagne*, conducted a choice-of-law analysis to determine whether to apply Louisiana or Texas law in calculating the amount of recoverable medical expenses also resulting from an automobile accident caused by an uninsured motorist. 264 So. 3d at 672–73. Although the accident occurred in Louisiana, was caused by a Louisiana driver, and the plaintiff had received emergency medical treatment in Louisiana, the *Jones* court held that "Texas has a more substantial interest in the application of its laws governing the recovery of medical expenses than Louisiana has in providing a remedy to an out-of-state resident, who was injured while transitorily within the borders of Louisiana, but incurred virtually all of her medical expenses in Texas." *Jones,* 264 So. 3d at 672–73.

It is undeniable that the facts in *Jones* adhere closely with those in the instant case; indeed, the *Jones* court's holding, quoted *supra*, could be applied to this case without changing a word other than the plaintiff's personal pronoun. Nonetheless, Plaintiff argues that *Jones* is inapplicable here. R. Doc. 43 at 11–12. First, Plaintiff asserts the choice-of-law analysis in both *Champagne*

11

and *Jones* was conducted pursuant to La. C.C. art. 3537, which pertains to conventional obligations, rather than Article 3542, for delictual obligations. *Id.* at 12. However, that is plainly incorrect as to *Jones*. In *Champagne*, the court applied Article 3537 because the issue before it was one of contractual interpretation, and thus sounded in conventional, not delictual, obligations. 93 So. 2d at 780–81. The *Jones* court cited to the Louisiana Supreme Court's decision in *Champagne* for its holding that, in a multistate case, if there is a difference in the states' relevant laws, courts must conduct a choice-of-law analysis "as set forth in La. C.C. art. 3515 *et seq*." to determine what law must apply. 264 So. 3d at 671. But it specifically noted that "[u]nlike the issue in *Champagne* . . . the choice-of-law issue herein does not pertain to the interpretation of the UM insurance contract[.]" *Id.* at 672 n. 9. *Jones* does not mention Article 3537 or any of its provisions, and it is clear that the court was aware that the issue before it was not contractual, but delictual, given its frequent references to the parties as "tort victim[s]" or "tortfeasor[s.]" *See id.* at 671–73. Thus, this Court finds no basis for Plaintiff's assertion that the *Jones* analysis is inapplicable to this case as conducted under a different and, here, irrelevant choice-of-law article.

      Second, Plaintiff argues *Champagne* and *Jones* are inapplicable because both "centered on the application of an insurance contract to the plaintiff's damages." R. Doc. 43 at 12. Again, as to *Jones* this is plainly untrue. In *Champagne*, the choice-of-law analysis was explicitly performed to determine under which state's laws the plaintiff's insurance contract had to be interpreted, and thereby to determine how the contract, properly interpreted, applied to the calculation of the plaintiff's recoverable damages. 93 So. 2d at 774–76. But *Jones* discussed the parties' insurance contacts only briefly as relevant state contacts to be considered in its choice-of-law analysis. *See* 264 So. 3d at 673. The reason for the difference is simple: while the *Champagne* court sought to establish which state's law should apply *to the insurance contract*, the *Jones* court's inquiry had

12

nothing to do with contractual interpretation, but rather sought to establish which state's law should control the quantum of the plaintiff's potential recovery for past medical expenses. Contrary to Plaintiff's assertion, *Jones* does not even address the application of a contract to the plaintiff's damages, let alone "center" on it.

Third, Plaintiff argues, in substance, that the key factor underlying the *Champagne* and *Jones* courts' conclusion that they must apply the law of the foreign state was that those cases involved contracts that "were negotiated and formed in a foreign state by citizens of that foreign state[,]" which would be abrogated were the Court to apply Louisiana law to the disputed issue. R. Doc. 43 at 12. Thus, Plaintiff claims the choice-of-law analyses in those cases are inapposite to the instant dispute, which involves no relevant foreign contract.[8] *See id.* The *Champagne* court did consider potential abrogation of a foreign contract by the application of the forum state's law as a factor in its choice-of-law analysis. *See* 93 So. 2d at 789. But, as discussed *supra*, the proper interpretation of the foreign contract was precisely the object of the court's choice-of-law analysis in *Champagne.* In *Jones*, the contracts are simply recognized as relevant contacts with the states; the fact that the plaintiff's insurance contract had been negotiated and formed in Texas is no more emphasized in the choice-of-law analysis than any other relevant contact, and potential abrogation is not discussed. *See* 264 So. 3d at 673. *Jones* is thus not inapplicable to the instant case.

Louisiana appellate court decisions like *Jones* are not binding on this Court, but it cannot disregard them unless it is "convinced the Louisiana Supreme Court would decide otherwise." *Wisznia Co.*, 759 F.3d at 448 (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352

---

[8] Plaintiff originally filed against Protective Insurance Company, in addition to FedEx and the John Doe driver, as the alleged insurer of those defendants. *See* R. Doc. 1-3 at 3. However, Plaintiff subsequently voluntarily dismissed it as a party to this action. *See* R. Doc. 12. In their briefing, neither Plaintiff nor FedEx has asserted the existence of any contract relevant to the instant choice-of-law analysis. *See* R. Docs. 28-1; 43.

F.3d 254, 261 (5th Cir. 2003)). The Louisiana Second Circuit's *Jones* holding is well reasoned and follows logically from the Louisiana Supreme Court's opinion in *Champagne*; thus, this Court finds no reason to disregard it. The automobile accident in *Jones* raised essentially the same policy considerations that are before the Court in this matter: in sum, whether, when a Texas citizen is injured within Louisiana but undergoes care with almost exclusively Texas medical care providers, Texas's interest in the application of its laws regarding the recovery of past medical expenses prevails over Louisiana's interest in regulating the recovery of a foreign plaintiff for tortious conduct having occurred within its borders.

The *Jones* court found that Texas's interest did prevail, and the Court finds no compelling reason to distinguish this case. Here, as in *Jones*, Plaintiff is a resident of Texas, with a vehicle registered in Texas, who was injured in an automobile accident, while transitorily in Louisiana, with a (presumed) Louisiana resident. As in *Jones*, all but one of the medical providers with whom Plaintiff sought care as a result of those injuries are located in Texas. The only additional contacts with Louisiana that Plaintiff asserts support the application of Louisiana law to the instant issue are that Plaintiff filed this suit in and is currently living temporarily in Louisiana, and that Plaintiff was performing work pursuant to a contract with a business located in Louisiana when the accident occurred. However, Plaintiff's choice of venue is not relevant to the instant choice-of-law analysis, and this Court does not find Plaintiff's temporary relocation from Texas to his mother's residence in Louisiana while recovering from his injuries to be a compelling reason for the application of Louisiana over Texas law to this dispute. Additionally, while Plaintiff's presence in Louisiana in the scope of business with an Audi dealership located in Louisiana could more strongly implicate Louisiana's interest in protecting him within its borders, this does not overcome Texas's interest in the application of its laws to the question of Plaintiff's recoverable past medical expenses. This

is true especially considering that Plaintiff's LLC, for which he was working while in Louisiana, is a Texas company, and that neither Audi, nor its American subsidiary, Audi of America, are headquartered in or organized under the laws of Louisiana.

Accordingly, this Court holds that the holding in *Jones* applies in equal force to the instant matter: "Texas has a more substantial interest in the application of its laws governing the recovery of medical expenses than Louisiana has in providing a remedy to an out-of-state resident, who was injured while transitorily within the borders of Louisiana, but incurred virtually all of [his] medical expenses in Texas."

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant FedEx Ground Package System, Inc.'s Motion in Limine, R. Doc. 28, is **GRANTED**.

New Orleans, Louisiana, this 31st day of October, 2023.

                                        Greg Gerard Guidry
                                     United States District Judge