**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PEPPER MANUEL** | **CIVIL ACTION** |
| **VERSUS** | **NO:   22-3194** |
| **PROTECTIVE INSURANCE COMPANY, ET AL** | **SECTION: "T" (4)** |

## <u>ORDER AND REASONS</u>

The Court has before it three related Motions in Limine filed by Plaintiff Pepper Manuel. Plaintiff moves this Court to exclude at trial any evidence regarding the reasonableness of his proffered medical bills. R. Doc. 34. Defendant FedEx Ground Package System, Inc. ("FedEx") has responded in opposition, R. Doc. 41, and Plaintiff has filed a reply memorandum, R. Doc. 57. Plaintiff separately moves the Court to exclude any testimony as to the reasonableness of his medical bills from FedEx's expert witnesses Stan McNabb, Burt Ashman, and Robert Eisenstadt, R. Doc. 32, and Michael Kaldis, R. Doc. 33. FedEx has responded in opposition to both motions, R. Docs. 39; 40, and Plaintiff has filed reply memoranda, R. Docs. 61; 59. Having considered the parties' arguments and the applicable law, the Court will DENY Plaintiff's motion to exclude all evidence regarding the reasonability of his medical bills, but will GRANT Plaintiff's motions to exclude the opinions of FedEx's experts as to that issue.

## I.     BACKGROUND

This case arises from a motor vehicle collision that occurred on March 7, 2022, in Metairie, Louisiana. R. Doc. 1-3 at 2. Plaintiff, a citizen of Texas, asserts he was seriously injured when his vehicle was rear-ended by a FedEx delivery truck, which then fled the scene. *Id.* at 1–2. Plaintiff,

who works independently for his own LLC as a "hotshot" trucker,[1] had just completed a delivery to an Audi car dealership located in Louisiana when the collision occurred. R. Doc. 43 at 1–2. Plaintiff filed suit in Louisiana state court, asserting that FedEx, which is incorporated under the laws of Delaware and has its principal place of business in Pennsylvania, *see* R. Doc. 1 at 3, is liable for the damages Plaintiff incurred as a result of the collision. *Id.* at 2–4. Plaintiff asserted several categories of damages in his complaint, including physical and mental pain and suffering, past and future medical expenses, lost wages, and loss of future earning capacity. *Id.* at 4. Based on diversity jurisdiction, FedEx removed the case to this Court, R. Doc. 1, which set it for trial by jury on December 4, 2023. R. Doc. 18. In anticipation of trial, both Plaintiff and FedEx filed several motions in limine, including Plaintiff's instant motions in limine.

## II.    LAW AND ANALYSIS

In the motions currently before the Court, Plaintiff seeks the exclusion at trial of all evidence and testimony regarding the reasonableness of his medical expenses allegedly incurred due to his injures from the instant accident. Plaintiff argues this evidence is irrelevant because, under Louisiana law, a plaintiff may recover any medical expenses incurred as a result of a tortious act by a defendant unless the defendant can show that the plaintiff incurred those medical expenses in bad faith. R. Doc. 34 at 58; *see also Rodrigue v. Nat'l Ins. Co.*, 2021 WL 3284254, at *1 (E.D. La. 2021) ("Under Louisiana law, 'a tortfeasor is required to pay for medical treatment of his victim, even for overtreatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith.'") (quoting *Alexander v. Ford*, 03-887 (La. App. 5 Cir. 1/27/04), 866 So. 2d 890, 899). However, this Court recently held that Texas law, not Louisiana, must be applied in

---

[1] "Hotshot" trucking refers to the hauling of small cargo loads, typically by means of a pickup truck with a trailer.

considering what amount of Plaintiff's past medical costs are recoverable should he prevail in this action. *See* R. Doc. 64. Under Texas law, a plaintiff may recover only those past medical expenses that he can show are "reasonable[.]" *See In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 249 (Tex. 2021) (citing *Dall. Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 380, 383 (1956)). Accordingly, evidence of the reasonableness of Plaintiff's proffered medical bills is not irrelevant and cannot be excluded on that basis. Plaintiff's first motion in limine, R. Doc. 34, must therefore be denied.[2]

Having determined that such evidence is relevant to the instant case, the Court must consider Plaintiff's arguments that the testimony of FedEx's experts on this issue must nonetheless be excluded as unreliable. *See* R. Docs. 32-1 at 4–8; 33-1 at 6–9. Federal Rule of Evidence 702 provides, *inter alia*, that admissible expert testimony must be "based on sufficient facts and data" and "the product of reliable principles and methods" which "[t]he expert has reliably applied . . . to the facts of the case." *See also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (holding that Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). In Plaintiff's first *Daubert* motion, Plaintiff challenges the reliability of FedEx's proffered expert report authored by vocational consultants McNabb and Ashman (the "McNabb Report"), as well as the report of economist Eisenstadt, to the extent that Eisenstadt relied on the McNabb Report. R. Doc. 32-1 at 4–8. Plaintiff argues that the McNabb Report is unreliable because it relies on data obtained from the "FAIR Health database" to determine the "usual, customary, and reasonable" ("UCR") costs for the medical services Plaintiff underwent in this case, then comparing those UCR figures to

---

[2] Plaintiff argues that, should the Court deny this motion, the Court should itself decide whether Plaintiff's recovery for his medical costs should be reduced as unreasonable, rather than allowing FedEx to present this issue to the jury. However, Texas courts submit this issue to the jury for decision, and the Court sees no reason why it should deviate therefrom in applying Texas law. Therefore, this request is also denied.

Plaintiff's medical bills to determine if Plaintiff's asserted medical costs are reasonable. *Id.*; *see also* R. Doc. 32-4 at 34–35. He asserts that FAIR Health data "is not designed to or intended for the determination of the reasonable value of medical services" but "to assist insurers in establishing their own usual and customary rates for out-of-network reimbursement decisions." R. Doc. 32-1 at 4–5 (citing FAIR HEALTH, FAQs, https://www.fairhealth.org/faqs). Additionally, Plaintiff points out that the FAIR Health database is "incomplete[,]" containing only charges submitted to those private insurers which elect to report them to FAIR Health. *Id.* at 5–6 (citing *Verci v. High*, 2019 IL App (3d) 190106-B, ¶ 32, 161 N.E.3d 249, 257).[3] FAIR Health then further pairs down those submitted costs removing "outlier" data. *See* FAIR HEALTH, FAQs. Thus, the FAIR Health databased represents only a "limited universe" of what healthcare providers charge for any service, *Belcher v. Kelly*, 2021 WL 62256, at *3 (D. Colo. 2021), and is "not a true representation of what medical providers charge." *Verci*, 161 N.E.3d at 257.

When expert testimony is challenged under *Daubert*, the burden of proving the testimony to be sufficiently reliable rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). Carrying this burden "requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Id.* In its argument that FAIR Health data is reliable, FedEx relies exclusively on an affidavit from McNabb, in which McNabb asserts, largely without citation, that FAIR Health data is reliable. *See* R. Docs. 39 at 3; 39-1 at 1–2. FedEx has not presented McNabb as an expert on FAIR Health itself, and nothing in McNabbs'

---

[3] FedEd objects to Plaintiff's reliance on *Verci*, arguing that "[a]ny factual findings from *Verci* are inadmissible hearsay within hearsay and should not be given any weight." R. Doc. 39 at 1–2. While FedEx is correct that the *Verci* opinion and any expert testimony relied on therein would not be admissible evidence at trial in this matter, the Court may of course consider that court's opinion and holding, and give it whatever weight the Court finds appropriate, in ruling on the instant motions.

curriculum vitae indicates that McNabb is qualified such that this Court should accept his *ipse dixit* as to the reliability of FAIR Health data. *See* R. Doc. 29-2. In support of the assertions in his affidavit, McNabb cites only to Roger O. Weed. & Debra E. Berens, Life Care Planning and Case Management Handbook (4th ed. 2019), stating that it "lists FAIR Health as a reputable and reliable cost database and recommends it's [sic] use by life care planners[.]" R. Doc. 29-1 at 2. While this may be true, it is insufficient alone to prove that FAIR Health data, for *Daubert* purposes, is reliable as used by McNabb in this case: to prove that Plaintiff's medical bills are unreasonable because they are higher than the FAIR Health UCR cost estimates for those procedures.

This conclusion is especially clear given that FedEx does not cite to a single case in which a court has found FAIR Health data to be reliable for *Daubert* purposes. On the other hand, Plaintiff cites to several cases in which courts found FAIR Health data to be unreliable for the reasons Plaintiff argues here, and excluded expert reports based thereupon as a result. *See, e.g.*, *Verci*, 161 N.E.3d at 257; *Belcher*, 2021 WL 62256, at *3–4; *Elsasser v. Devon Energy Prod. Co., L.P.*, 2023 WL 4490401, at *4 (D. Wyo. Feb. 3, 2023); *August v. Urquhart*, 2022 WL 16745769, at *2 (D. Colo. Sept. 20, 2022); *Lomibo LLC v. Vermont Mut. Ins. Grp.*, 2018 Mass. App. Div. 79 (Dist. Ct. 2018). While not binding, the Court finds the reasoning of those courts to be persuasive, and FedEx has presented no compelling argument to the contrary. Accordingly, FedEx has failed to carry its burden of proving the McNabb report to be sufficiently reliable for admission under Rule 702 and *Daubert*. Thus, Plaintiff's second motion in limine, R. Doc. 32, must be granted, and any testimony from McNabb and Ashman shall be excluded from use at trial to the extent that it relies on FAIR Health data. Additionally, any testimony from Eisenstadt shall be excluded to the extent that it relies on the McNabb Report's use of FAIR Health data.

In his second *Daubert* motion, Plaintiff challenges the proffered report of FedEx's expert Dr. Michael Kaldis as unreliable. R. Doc. 33. In his report, Kaldis opines generally that Plaintiff's medical bills are not reasonable based on the "usual and customary" charge for the services he received. *See* R. Doc. 33-4. For example, Kaldis states that Plaintiff's $82,945 bill for six separate treatments at the Origin Spine Institute is "excessive" because "[t]he usual and customary charge for a single level epidural or facet injection is $1500 for the surgeon, $70 for IV anesthesia/sedation and $5000 for facility fee." *Id.* at 4. FedEx argues that Kaldis's assertions as to which charges are "excessive" and which "usual and customary" are reliable because "[a]s an orthopedic spine surgeon in the Houston area, Dr. Kaldis would be aware of what his colleagues, and the facilities in the area charge for various spine-related procedures such as the ones Plaintiff received." R. Doc. 40 at 2.

It is true that, to qualify as an expert, a witness "need only possess a higher degree of knowledge, skill, experience, training, or education than an ordinary person in the subject matter of her testimony." *Collins v. Benton*, 470 F. Supp. 3d 596, 603 (E.D. La. 2020) (quoting *Thomas v. Chambers*, 2019 WL 8888169, at *12 (E.D. La. Apr. 26, 2019)). To the extent that Kaldis opines in his report about the *necessity* of the medical care Plaintiff has received or may require in the future, Kaldis may well be qualified to make those assertions. However, as Plaintiff argues, Kaldis's experience as an orthopedic spine surgeon alone "does not equate to possessing the requisite higher degree of knowledge regarding the usual and customary medical charges for various medical procedures to be qualified as a medical billing expert." R. Doc. 33 at 7. Kaldis's report provides no grounds for his qualification as a medical billing expert, nor for Kaldis's opinions that certain medical charges are "excessive" and others "usual and customary[.]" The report does not provide *any* basis for the "usual and customary" cost figures Kaldis presents, such

as what Kaldis or his colleagues in the Houston area charge for the type of procedures Plaintiff underwent. The report does not even indicate whether Kaldis himself routinely performs such procedures, let alone that he is personally involved in their billing. These figures and their designation as "usual and customary" seem to come out of whole cloth.

"The aim [of a court's inquiry into the reliability of expert testimony] is to exclude expert testimony based merely on subjective belief or unsupported speculation." *Collins*, 470 F. Supp. 3d at 602. Here, the Court cannot ascertain any supporting basis for Kaldis's medical costs testimony, and his qualification as a spinal surgeon alone is insufficient to render him qualified as a medical billing expert. Accordingly, Kaldis's testimony as to the reasonability of Plaintiff's medical bills must be excluded from use at trial.

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion, R. Doc. 34, is **DENIED**. However, Plaintiff's other Motions, R. Docs. 32 and 33, are hereby **GRANTED**.


New Orleans, Louisiana, this 31st day of October, 2023.


_____
Greg Gerard Guidry
United States District Judge